UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANTHONY LOPEZ,

                              Plaintiff,          Civil Action No.

    -against-                                    **COMPLAINT**

CITY OF NEW YORK;                            JURY TRIAL DEMANDED
NEW YORK CITY POLICE DEPARTMENT;
DET. SASHA NEVE (a.k.a. SASHA CORDOBA);
DET. KEVIN DESORMEAU;
POLICE OFFICERS "JOHN DOE" #1-5
(said names being fictitious, as the true names are
presently unknown),
Individually and in their Official Capacities,

                              Defendants.
----------------------------------------------------------------X

      Plaintiff ANTHONY LOPEZ, by his attorneys, BRILL LEGAL GROUP, P.C., hereby brings this action under 42 U.S.C. § 1983 to redress his civil and legal rights, and alleges as follows:

## PRELIMINARY STATEMENT

      1.      This is a civil rights action in which the plaintiff, ANTHONY LOPEZ, seeks relief for the defendants' violations of his rights secured by 42 U.S.C. § 1983, and by the laws and Constitution of the United States. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

      2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

3. Venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c) in that Defendants City of New York and New York City Police Department ("NYPD") maintain police precincts throughout the Eastern District of New York, employed and supervised the individual defendants at the time of the incident(s) complained of herein, and the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

**JURY TRIAL DEMANDED**

4. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

**PARTIES**

5. At all times relevant to this action, Plaintiff ANTHONY LOPEZ was a resident of Queens County, New York. He is currently a resident of Queens County, New York.

6. Defendant CITY OF NEW YORK ("CITY") is a Municipal Corporation duly incorporated and existing pursuant to the laws of the State of New York. The City of New York has established and maintains the NEW YORK CITY POLICE DEPARTMENT as a constituent department or agency.

7. At all relevant times, the City of New York and the NYPD employed the Defendants identified below.

8. Defendants Det. Sasha Neve (a.k.a. Sasha Cordoba) ("Cordoba"); Det. Kevin Desormeau ("Desormeau"), Police Officer John Doe #1, Police Officer John Doe #2, Police Officer John Doe #3, Police Officer John Doe #4, Police Officer John Doe #5, were and are employed by the NYPD, were acting under color of law at all times relevant to this Complaint, and are sued in their individual capacities and in their capacities as police officers for Defendants NYPD and CITY.

9. Defendants (the "individual Defendants") were at all relevant times, on duty on July 17, 2014, and at all other times and dates relevant to this Complaint and as described herein.

## STATEMENT OF FACTS

10. On or about July 10, 2014, a police officer employed by Defendant NYPD and assigned to the Queens Gang Squad appeared before a judge of the Queens Criminal Court, along with a confidential informant (C.I.) registered to the Queens Gang Squad, to swear out a search warrant.

11. Upon information and belief, that C.I. was registered to Defendant Desormeau or Cordoba, who were then assigned to the Queens Gang Squad, in internal NYPD records.

12. Upon information and belief, at the behest of Desormeau, Cordoba, and/or other members of the Queens Gang Squad complicit in their deception, that C.I. provided perjured testimony to the Criminal Court judge to the effect that illegal firearms were or had been in the possession of a resident of 108-25 154th Street in Jamaica, Queens County, New York.

13. In reality, the C.I. has no information about criminal conduct by any resident of 108-25 154th Street. He was, however, fed information by Desormeau, Cordoba, and/or other members of the Queens Gang Squad complicit in their deception, which was the basis of his perjured testimony.

14. Upon information and belief, the police officer who appeared before the Criminal Court judge on that day also provided perjured testimony as to the reliability and trustworthiness of that C.I. to that Criminal Court judge, despite knowing that the C.I. was not providing truthful information.

15. As a result of the perjured testimony, and in reliance upon that testimony, the Criminal Court judge signed a "no knock" search warrant for 108-25 154th Street.

16. Anthony Lopez, a paraprofessional employed by the New York City Department of Education ("DOE") and a basketball coach revered in the community, had moved into the basement apartment 108-25 154th Street in or about 2013, along with his middle school-aged son. He had no criminal record.

17. Mr. Lopez had moved into the apartment following the untimely and tragic death of the upstairs tenant, his best friend, to help his partner and child after his death.

18. The downstairs apartment was separate from the upstairs apartment, but there was no locked door separating the two living areas.

19. Prior to July 17, 2014, Mr. Lopez's beloved dog had passed away after a long illness. As part of his medical treatment, the dog had been prescribed medication that had to be injected, which Mr. Lopez administered until the dog's tragic death. There were a few leftover syringes from the dog's medication in a package in the top of a closet in Mr. Lopez's apartment, for which he had documentation from the veterinarian.

20. Also prior to July 17, 2014, Mr. Lopez had been in contact with members of the NYPD to discuss a neighborhood gun buyback. This was prompted by a family member who called Mr. Lopez, as many people in the neighborhood did, when they had a problem they needed help with. In this situation, the family member had a child who had been incarcerated. The incarcerated person had left two firearms in the family member's home, and the family member was scared of them and wanted the guns removed. Initially, Mr. Lopez wanted no part of removing the guns, but he agreed to do so, after speaking to an NYPD officer about how to turn them in. Originally, they discussed simply walking them into the local precinct, but then arrived at a plan to do more good for the community by holding the gun buyback program

shortly thereafter. It was at that time that he intended to hand the firearms over to the police, which would also "prime the pump" for other guns to be turned in at the event.

21.     At that point, Mr. Lopez removed the firearms, a shotgun and a handgun, from the family member's home, removed the magazines and ammunition from them, disassembled them to the best of his ability, and stored the magazines, ammunition, and pieces of the guns separately and buried at the bottom of his closet, in anticipation of the gun buyback.

22.     On the morning of July 17, 2014, based upon the fraudulently secured search warrant, members of the Queens Gang Squad, including Desormeau and Cordoba, executed a search of 108-25 154th Street, starting with the shed. They then proceeded to search the entire house.

23.     Upon completion of the search of Mr. Lopez's living area, Queens Gang Squad members claimed they found narcotics, drug paraphernalia, and the guns.

24.     There were no narcotics in Mr. Lopez's living area unless placed therein by members of the NYPD.

25.     Based on the above-described false and misconstrued evidence, Mr. Lopez was arrested, taken into custody for several long hours to be processed being processed and arraigned, before ultimately being released on bail.

26.     As a result of the arrest, Mr. Lopez was suspended from his DOE job and his coaching positions.

27.     Mr. Lopez continuously insisted to multiple members of the Queens District Attorney's office at several meetings that the narcotics alleged to have been in his living area had been planted by the police. Every time he made the allegations to an Assistant District Attorney, his claims of innocence were ignored. At one meeting, he was told by an Assistant District

Attorney never to bring it up again or he would jeopardize any possible positive resolution of his case.

28. After many months of delicate negotiations with the District Attorney's Office, Mr. Lopez was offered a plea bargain to a misdemeanor weapons possession charge. He was told he could take it on the spot or face indictment. As he was facing the potential of being indicted on multiple felonies and the prospect of years of prison time if convicted, he chose to plead guilty, despite his misgivings.

29. Mr. Lopez was subsequently fired from his position with the DOE and has struggled to find suitable employment in light of the criminal conviction that resulted from the above facts.

30. In February of 2017, Mr. Lopez learned of the arrests of Desormeau and Cordoba for allegedly lying on a search warrant application and to the grand jury. The allegations looked strikingly similar to how he had been treated by them. It was even more upsetting when they were arrested a second time for similar misconduct.

31. Mr. Lopez chose to bring this matter before the Court to address the flagrant corruption and misconduct of these rogue police officers, and anyone else who was complicit in their actions against him.

## FIRST CAUSE OF ACTION
(Deprivation of Rights under 42 U.S.C. § 1983)

32. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "31" with the same force and effect as if fully set forth herein.

33. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

34. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

35. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

36. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the NYPD, all under the supervision of ranking officers of said department.

37. The lack of training, hiring, and screening procedures on the part of the NYPD, led predictably and foreseeably to the constitutional violations in this case.

38. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983)

39. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "38" with the same force and effect as if fully set forth herein.

40. The supervisory Defendants personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

41. The supervisory Defendants were personally involved in either ordering, or failing to take preventative and remedial measures to guard against, Plaintiff's constitutional deprivations. The supervisory Defendants knew, or in the exercise of due diligence, should have known that the actions taken against Plaintiff by the named and unnamed individual police officer defendants was likely to occur.

42. The failure of the individual supervisory Defendants to train, supervise and/or discipline the named and unnamed individual defendants with respect to the constitutional rights of civilians amounted to gross negligence, deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to plaintiffs set forth above.

## THIRD CAUSE OF ACTION
(Malicious Abuse Of Process under 42 U.S.C. 1983)

43. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "42" with the same force and effect as if fully set forth herein.

44. Defendants issued legal process to place plaintiff under arrest.

45. Defendants arrested plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

46. Defendants acted with the intent to do harm to plaintiff, without excuse or justification.

47. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, he suffered physical injuries at the hands of defendants and he was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## FOURTH CAUSE OF ACTION
(*MonelI* Claim under 42 U.S.C. § 1983)

48. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through " 47" with the same force and effect as if fully set forth herein.

49. All of the acts and omissions by the named and unnamed individual defendants described above were carried out pursuant to overlapping policies, customs, and practices of CITY and the NYPD and were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent and cooperation and under the supervisory authority of the Defendants CITY and the NYPD.

50. Defendants CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or encouraged those acts to continue.

51. The actions of the individual defendants resulted from and were taken pursuant to the following *de facto* policies and/or well-settled and widespread customs and practices of the CITY, which are implemented by members of the police department:

a. Police Officers are insufficiently educated about the laws they are sworn to uphold, or about the Constitutions of New York and the United States, and are encouraged by their supervisors to make arrests without regard for the constitutional rights of individuals, or for the existence of probable cause, or even for the truth or falsity of the accusations, without fear of reprimand, discipline.

b. NYPD officers engage in systemic and ubiquitous perjury, both oral and written, to cover up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Police Commissioner who all:

    i.  Tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia,* in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and

    ii.  Encourage and/or fail to discipline officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians.

  52.  The existence of the foregoing unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and CITY without limitation.

  53.  Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of CITY and the NYPD, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train, screen, and/or hire police officers who dutifully respect constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

54. The aforementioned policies, practices, and/or customs of failing to supervise, train, hire, screen and or instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.

55. Upon information and belief, the Defendant police officers herein were the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to Defendant CITY and its agency, the NYPD, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of the by the plaintiff herein.

56. The plaintiff's injuries were a direct and proximate result of Defendant CITY and its agency, the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the Defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

57. Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiff of his rights, in violation of their Constitutional rights protected under applicable Federal and state law.

58. Defendant CITY is directly liable and responsible for the acts of the individual police Defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

**FIFTH CAUSE OF ACTION**
(Municipal Liability under 42 U.S.C. § 1983)

59. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "58" with the same force and effect as if fully set forth herein.

60. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

61. The aforementioned customs, policies, usages, practices, procedures and rules of the NYPD included, but were not limited to committing perjury and/or manufacturing evidence in an effort to convict individuals, pursuant to a policy, custom or practice of fabricating evidence and offering false testimony, and pursuant to a culture of the so-called "blue wall of silence." In addition, CITY engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of Plaintiff's rights as described herein. As a result of the failure of the CITY to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, CITY has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

62. The foregoing customs, policies, usages, practices, procedures and rules of CITY and the NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

63. The foregoing customs, policies, usages, practices, procedures and rules of CITY and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

64. The foregoing customs, policies, usages, practices, procedures and rules of CITY and the NYPD were the moving force behind the Constitutional violations suffered by Plaintiff as alleged herein.

65. As a result of the foregoing customs, policies, usages, practices, procedures and rules of CITY and the New York City Police Department, Plaintiff was unlawfully arrested, prosecuted, and convicted.

66. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

67. All of the foregoing acts by defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

    a. To be free from excessive force;

    b. To be free from the failure to intervene;

    c. To receive equal protection under law; and

68. As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.

## SIXTH CAUSE OF ACTION
(Conspiracy to Violate Civil Rights)

69. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through " 68" with the same force and effect as if fully set forth herein.

70. All of the aforementioned Defendants conspired to violate Plaintiffs civil rights by agreeing among themselves to commit the acts, as described above, in violation of 42 U.S.C. § 1985, for which the Defendants are individually liable.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered as follows:

(A) Declaratory relief as follows:

1. A declaration that Plaintiff's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution was violated;

2. A declaration that Plaintiff's right to be free from unreasonable searches and seizures under New York State Constitution was violated;

3. A declaration that Plaintiff's right to be free from excessive and unreasonable force under the Fourth and Fourteenth Amendments of the United States Constitution was violated;

4. A declaration that Plaintiff's right to be free from malicious prosecution under the United States Constitution was violated;

(B) A declaration that Plaintiff's right to be free from excessive and unreasonable force under the New York State Constitution was violated;

(C) Compensatory damages in an amount to be determined by a jury;

(D) By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages in an amount to be fixed at trial;

(E) An award to Plaintiff of the costs and disbursements herein;

(F) An award of attorney's fees under 42 U.S.C. §1988;

(G) Such other and further relief as this Court may deem just and proper.

Dated: July 17, 2017

    Yours, etc.

    /s/ Joseph P. Griffin
    BRILL LEGAL GROUP, P.C.
    By: Joseph P. Griffin
    64 Hilton Avenue
    Hempstead, NY 11550
    (888) 315-9841