UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANTHONY LOPEZ,

                    Plaintiff,

                                          1:17-cv-04223-FB-VMS

     -against-

                                            **AMENDED COMPLAINT**

CITY OF NEW YORK; QUEENS COUNTY DISTRICT       JURY TRIAL DEMANDED
ATTORNEY'S OFFICE; NEW YORK CITY POLICE
DEPARTMENT; DET. SASHA NEVE (A.K.A. SASHA
CORDOBA); DET. KEVIN DESORMEAU; POLICE
OFFICER STEPHEN LACLAN; POLICE SGT. LARRY
FLUNORY; POLICE SGT. RICHARD MEZZATESTA;
RET. DET. JOHN BARRATT; CAPT. VINCENT TAVA-
LARO; DET. MICHAEL DUFFY; DET. ROCK PEREIRA;
DET. DANIEL SJOBERG; DET. STEVEN MILLWATER;
DET. CHRISTOPHER CRUZADO; DET. STEVEN
HILLMAN; DET. MICHAEL O'BRIEN; HON. RICHARD
A. BROWN, A.D.A. KAITLIN MCTAGUE, AND A.D.A.
RICHARD SCHAEFFER; INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES,

                    Defendants.
------------------------------------------------------------------X

       Plaintiff ANTHONY LOPEZ, by his attorneys, BRILL LEGAL GROUP, P.C., hereby

brings this action under 42 U.S.C. § 1983 to redress his civil and legal rights, and alleges as fol-

lows:


## PRELIMINARY STATEMENT

    1.       This is a civil rights action in which the plaintiff, ANTHONY LOPEZ, seeks

relief for the defendants' violations of his rights secured by 42 U.S.C. § 1983, and by the laws

and Constitution of the United States. Plaintiff seeks compensatory and punitive damages, an

award of costs, interest and attorney's fees, and such other and further relief as this Court deems

just and proper.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

3. Venue in this District is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391 (c) in that Defendants City of New York and New York City Police Department ("NYPD") maintain police precincts throughout the Eastern District of New York, employed and supervised the individual defendants at the time of the incident(s) complained of herein, and the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

## JURY TRIAL DEMANDED

4. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

5. At all times relevant to this action, Plaintiff ANTHONY LOPEZ was a resident of Queens County, New York. He is currently a resident of Queens County, New York.

6. Defendant CITY OF NEW YORK ("CITY") is a Municipal Corporation duly incorporated and existing pursuant to the laws of the State of New York. The City of New York has established and maintains the NEW YORK CITY POLICE DEPARTMENT as a constituent department or agency.

7. At all relevant times, the City of New York and the NYPD employed the Defendants identified below.

8. At all times described herein, Defendants Det. Sasha Neve (a.k.a. Sasha Cordoba) ("Cordoba"), Det. Kevin Desormeau ("Desormeau"), Police Officer Stephen Laclan, Police Sgt. Larry Flunory, Police Sgt. Richard Mezzatesta, Ret. Det. John Barratt[1], Capt. Vincent Tavalaro, Det. Michael Duffy, Det. Rock Pereira, Det. Daniel Sjoberg, Det. Steven Millwater, Det. Christopher Cruzado, Det. Steven Hillman, and Det. Michael O'Brien ("the Individual Police Officers," identified by counsel for the Defendants as having participated in the allegedly illegal arrest of Plaintiff Lopez on or about July 10, 2014), and upon information and belief were employed by the NYPD and on duty at all relevant times and acting under color of law at all times relevant to this Complaint, and are sued in their individual capacities as well as in their capacities as police officers for Defendants NYPD and CITY.

## STATEMENT OF FACTS

9. In or about 2013, Plaintiff, a paraprofessional employed by the New York City Department of Education ("DOE") and a basketball coach revered in the community, moved into a basement apartment located at 108-25 154th Street, along with his middle school-aged son.

10. Plaintiff's apartment was separate from the upstairs apartment.

11. Prior to July 17, 2014, Plaintiff's dog had been prescribed medication that had to be administered by syringes that Plaintiff kept in a package inside and near the top of a closet within Plaintiff's basement apartment.

12. Also prior to July 17, 2014, Plaintiff spoke to an NYPD officer on behalf of a member of Plaintiff's family who had found a shotgun and a handgun in their home.

---

[1] John Barratt has been identified by Defendants as "Retired Detective John Barratt" as having participated in the illegal arrest of Plaintiff Anthony Lopez.

13. After making initial arrangements with the NYPD to set up a neighborhood gun buyback, Plaintiff disassembled the firearms to the best of his ability in anticipation of the gun buyback.

14. Plaintiff never owned or operated these firearms, had no knowledge of their operability and at the time of the illegal search of Plaintiff's home by Defendants, these firearms were, as Plaintiff repeatedly informed Defendants, inside his home only in anticipation of being turned in to the NYPD.

15. On or about July 10, 2014, a police officer employed by Defendant NYPD and assigned to the Queens Gang Squad appeared before a judge of the Queens Criminal Court, along with a confidential informant registered to the Queens Gang Squad, to swear out a search warrant.

16. Upon information and belief, the aforementioned "informant" was registered to Defendant Desormeau or Cordoba, who were then members of the Queens Gang Squad.

17. Upon information and belief, at the behest of Desormeau, Cordoba, and/or other members of the Queens Gang Squad complicit in their deception, the aforementioned "informant" provided perjured testimony to the Criminal Court judge to the effect that illegal firearms were or had been in the possession of a resident of 108-25 154th Street in Jamaica, Queens County, New York.

18. Upon information and belief, the "informant" did not possess any information about any criminal conduct by any resident of 108-25 154th Street. The warrant, in addition to having been obtained by fraud, did not expressly authorize the search of Plaintiff's apartment.

19. Upon information and belief, Defendants Desormeau, Cordoba, and/or other members of the Queens Gang Squad provided their "informant" with information and directed their "informant" to present said information as his/her own, and then compounded this fraud by appearing before a Criminal Court judge where Defendants provided perjured testimony as to the reliability

and trustworthiness of said "informant," as well as facilitating the issuance of a warrant based on information provided not by any informant but by Defendants themselves.

20. As a result of and in reliance upon perjured testimony, a judge of the Queens Criminal Court signed a "no knock" search warrant for 108-25 154th Street.

21. On the morning of July 17, 2014, based upon the fraudulently secured search warrant, members of the Queens Gang Squad, including Defendants Desormeau and Cordoba, executed a search of 108-25 154th Street, beginning in an adjoining apartment but eventually extending to search the entire house, including Plaintiff's basement apartment.

22. At the time the warrant was executed, Plaintiff had no criminal record and had never been arrested or accused of any crime.

23. After a search of Plaintiff's living area failed to result in any evidence of criminality, members of the Queens Gang Squad falsely claimed to have discovered cocaine and heroin, as well as the syringes, which Defendants falsely described as "drug paraphernalia."

24. Upon information and belief, the Individual Police Officers either actively participated in the events described herein by assisting with the planting of false evidence within the home of Plaintiff, and/or aiding in the concealment of this fraud, and/or aiding in the arrest of Plaintiff with actual or constructive knowledge of the falseness of the evidence against him, and/or aiding in the arrest of Plaintiff with actual or constructive knowledge that the search warrant was obtained by fraud, and/or aiding in the arrest of Plaintiff with actual or constructive knowledge that the search warrant even if lawful, did not encompass the home of Plaintiff, and/or aiding in the application for the Search Warrant described herein with actual or constructive knowledge that the search warrant was obtained by fraud.

25.Plaintiff was arrested, taken into custody for several long hours to be processed being processed and arraigned, before ultimately being released on bail.

26.Defendants charged Plaintiff with criminal possession of two firearms and ammunition, without any evidence of the operability of either the weapons or the ammunition, and despite Plaintiff's repeated protestation that the weapons were not his property and that he had not used them in any sense except, as indicated, to turn them in to the police.

27.As a New York City Department of Education employee, Plaintiff was required to inform his employer of his arrest.

28.Plaintiff did inform his employer of the arrest and in response, Plaintiff was suspended from his DOE job and his coaching positions.

29.Plaintiff steadfastly and consistently protested his actual innocence of any wrongdoing to Defendant District Attorney, and consistently explained that there had never been any illicit narcotics anywhere within his home, other than those substances placed therein by members of the NYPD.

30.Said substances were alleged but never proven to be heroin and cocaine, and Plaintiff offered to show Defendants documentation from a veterinarian for the syringes, but Defendants refused to consider this exculpatory evidence and instead relied on the fact that syringes were found within Plaintiff's home in order to unconstitutionally pressure Plaintiff into pleading guilty by threatening to add charges based on possession of the syringes, despite the complete lack of any reasonable basis to believe their possession illegal.

31.Plaintiff received at least four notices indicating that case 2014QN042154, *People v. Anthony Lopez,* "will be presented to the Grand Jury," specifically, that the case would be presented

to the Grand Jury on April 2, 2015, and again on July 14, 2015, and again on July 30, 2015, and September 17, 2015.

32. Upon information and belief, Defendants did not present case 2014QN042154 to the Grand Jury on April 2, 2015, nor on July 14, 2015, nor on July 30, 2015, nor on September 17, 2015, nor on any other date.

33. Plaintiff was never indicted, and never received any notice of dismissal, and upon information and belief, Defendants had, at a minimum, actual or constructive knowledge of the lack of sufficient evidence against Plaintiff and repeatedly served illusory notices of Grand Jury action for the sole purpose of coercing Plaintiff into accepting a plea deal, which he did as a result of this and other unconstitutional pressure applied by Defendants.

34. Instead of presenting the case to the Grand Jury, the Queens D.A., either with actual knowledge of the false evidence, or deliberate ignorance thereof, used the threat of a Grand Jury presentation to coerce Plaintiff into pleading guilty despite his actual innocence.

35. At several meetings with prosecutors, Plaintiff repeatedly insisted that the narcotics alleged to have been in his living area had been placed there by the police. Defendants steadfastly ignored Plaintiff's claims of innocence, threatened to indict him for possession of the narcotics planted by Defendants in his apartment, and threatened to make sure he never saw his son again.

36. Upon information and belief, throughout the pendency of the underlying criminal prosecution, Defendant Queens District Attorney either had actual knowledge of the false evidence used to arrest Plaintiff, or else they willingly ignored their constitutional duty to investigate that evidence and the claims made by Defendant NYPD officers as part of an effort to secure a conviction at all costs, without regard for the evidence.

37. At one meeting, Plaintiff was told by an Assistant District Attorney never to bring it up again or he would jeopardize any possible positive resolution of his case.

38. There was no pre-trial suppression hearing at any time during the pendency of the criminal case against Plaintiff.

39. After many months of meetings and conversations with the District Attorney's Office, Plaintiff was offered a conditional discharge based on a plea to a misdemeanor weapons possession charge.

40. Defendants flatly informed Plaintiff that if he did not accept the deal, they would indict him, despite lacking any intention to do so and despite lacking a good faith basis to believe there was sufficient evidence to present any case to the Grand Jury.

41. Upon information and belief, District Attorney Brown had constructive notice of the discrimination carried out by his subordinates in that their conduct was not isolated but was in fact of years-long, office-wide, top-down pattern of pressuring Assistant District Attorneys to move cases, to avoid questioning police officers, to avoid examining evidence and to instead secure convictions quickly and by whatever means necessary.

42. To wit, District Attorney Brown either had actual knowledge of the constitutional violations alleged herein and acquiesced, or knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see, or, was reckless in his supervision of his subordinates, or was grossly negligent in that supervision.

43. Plaintiff, already charged with numerous, serious crimes based on evidence manufactured by Defendants, did not trust the criminal justice system to provide him a fair trial and rather than being indicted on multiple felonies, with the prospect of years of prison time, he chose to plead

guilty, despite his misgivings, entering a guilty plea to one count of Criminal Possession of a Firearm (P.L. 265.01).

44. At no time did Plaintiff ever admit that the search of his apartment was proper under the Fourth Amendment, nor did he at any time waive his right to a proper search nor his right to have the Court review that search.

45. Plaintiff plead guilty only because of the intense, and unconstitutional pressure from Defendants, in a case where the Court's jurisdiction over the Mr. Lopez was procured by fraud, perjury and other corrupt means, by Defendants, in violation of federally protected rights.

46. The Court accepted his plea on the 28th day of October, 2015, and imposed the sentence of a Conditional Discharge on that same day.

47. In February of 2017, Plaintiff learned of the arrests of Desormeau and Cordoba for allegedly lying on a search warrant application and to the grand jury. The allegations looked strikingly similar to how he had been treated by them.

48. Specifically, news reports stated that Defendants Desormeau and Cordoba charged with first-degree offering a false instrument for filing, and Detective Cordoba was also charged with first-degree perjury and making a punishable false written statement.

49. News reports showed that Defendants had made the false claims to prosecutors and in official paperwork and that Detective Cordoba repeated the false account in a Criminal Court complaint, a search warrant application that was signed by a judge, and before a grand jury, leading to the indictment of a man in connection with the arrest in question.

50. In March of 2017, Plaintiff learned, via news reports, that Defendants Desormeau and Cordoba had been charged in a second case, accused of framing a man for selling crack cocaine in Queens.

51.Defendants Desormeau and Cordoba were in fact indicted for numerous counts of perjury, filing false instruments and making false statements in the Supreme Court of New York County under Indictment Number 00059-2017 (Defendants Desormeau and Cordoba) and Indictment Number 00348-2017 (Defendants Desormeau and Cordoba).

## FIRST CAUSE OF ACTION
### (Deprivation of Rights under 42 U.S.C. § 1983)

52.Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

53.All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

54.All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983, as well as the New York Constitution.

55.The acts complained of were carried out by the aforementioned individual defendants in their capacities, with the entire actual and/or apparent authority attendant thereto.

56.The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York, the NYPD, and Queens County District Attorney's Office, all under the supervision of ranking officers and attorneys of each.

57.The lack of training, hiring, and screening procedures on the part of the NYPD led predictably and foreseeably to the constitutional violations in this case.

58. The lack of training, hiring, and screening procedures on the part of the Queens County District Attorney's Office led predictably and foreseeably to the constitutional violations in this case.

59. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CAUSE OF ACTION
### (Supervisory Liability under 42 U.S.C. § 1983)

60. Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

61. The supervisory Defendants personally caused Plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

62. The supervisory Defendants were personally involved in either ordering, or failing to take preventative and remedial measures to guard against, Plaintiff's constitutional deprivations. The supervisory Defendants knew, or in the exercise of due diligence, should have known that the actions taken against Plaintiff by the named and unnamed individual police officer defendants was likely to occur.

63. The failure of the individual supervisory Defendants to train, supervise and/or discipline the named and unnamed individual defendants with respect to the constitutional rights of civilians amounted to gross negligence, deliberate indifference or intentional misconduct which directly and proximately caused the injuries and damages to plaintiffs set forth above.

## THIRD CAUSE OF ACTION
### (Malicious Abuse of Process under 42 U.S.C. 1983)

64. Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

65. Defendants issued legal process to place plaintiff under arrest without probable cause to believe him guilty of any crime.

66. Defendants arrested plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process. To wit, upon information and belief, Defendants searched the home of Plaintiff, planted evidence, arrested and booked Plaintiff to further their careers within the NYPD, by creating the illusion of doing actual policework, and by concealing the actual fraud they perpetrated.

67. Defendants acted with the intent to do harm to plaintiff, without excuse or justification.

68. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, he suffered physical injuries at the hands of defendants and he was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

69. Defendant District Attorneys had a duty under both the United States and New York Constitutions to investigate the arrest of Plaintiff but failed to do so initially, instead arraigning him based entirely on the false statements of Defendant police officers and subsequently, initiated and continued a prosecution without ever investigating at all, choosing instead to do their utmost to secure a conviction.

70.Upon information and belief, Defendant District Attorneys also failed to investigate the "confidential informant(s)" and actively or tacitly assisted Defendant officers in defrauding the Court by presenting false evidence in support of the issuance of a search warrant.

## FOURTH CAUSE OF ACTION
### (*Monell* Claim under 42 U.S.C. § 1983)

71.Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

72.All of the acts and omissions by the named and unnamed individual defendants described above were carried out pursuant to overlapping policies, customs, and practices of the CITY, the NYPD and the Queens County District Attorney's Office, and were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent and cooperation and under the supervisory authority of the Defendants CITY, the NYPD and the Queens County District Attorney's Office.

73.Defendants CITY, the NYPD and the Queens County District Attorney's Office, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or encouraged those acts to continue.

74.The actions of the individual defendants resulted from and were taken pursuant to the following *de facto* policies and/or well-settled and widespread customs and practices of the CITY, which are implemented by members of the police department and Queens County District Attorney's Office:

a. Police Officers are insufficiently educated about the laws they are sworn to uphold, or about the Constitutions of New York and the United States, and are encouraged by their supervisors to make arrests without regard for the constitutional rights of individuals, or for the existence of probable cause, or even for the truth or falsity of the accusations, without fear of reprimand, discipline.

b. Assistant District Attorneys are insufficiently educated about the laws they are sworn to prosecute, or about the Constitutions of New York and the United States, and are encouraged by their supervisors to seek convictions without regard for the constitutional rights of individuals, or for the existence of sufficient evidence, or even for the truth or falsity of the accusations, without fear of reprimand, discipline.

c. NYPD officers engage in systemic and ubiquitous perjury, both oral and written, to cover up constitutional and state law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Police Commissioner who all:

i. Tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, *inter alia,* in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and

ii. Encourage and/or fail to discipline officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover up

civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates against those civilians.

75.The existence of the foregoing unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the CITY, the NYPD and the Queens County District Attorney's Office, without limitation.

76.Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of CITY, the NYPD and the Queens County District Attorney's Office, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train, screen, and/or hire police officers who dutifully respect constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

77.The aforementioned policies, practices, and/or customs of failing to supervise, train, hire, screen and or instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.

78.Upon information and belief, the Defendant police officers herein were the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to Defendant CITY and the Queens County District Attorney's Office that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of the by the plaintiff herein.

79. The plaintiff's injuries were a direct and proximate result of Defendants CITY, the NYPD and the Queens County District Attorney's Offices wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the Defendant CITY, the NYPD and the Queens County District Attorney's Office to properly supervise, train and discipline their employee officers and attorneys.

80. Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiff of his rights, in violation of their Constitutional rights protected under applicable Federal and state law.

81. Defendant Queens County District Attorney's Office knew or should have known that the acts alleged herein would deprive plaintiff of his rights, in violation of their Constitutional rights protected under applicable Federal and state law.

82. Defendant CITY is directly liable and responsible for the acts of the individual Defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

**FIFTH CAUSE OF ACTION**
(Municipal Liability under 42 U.S.C. § 1983)

83. Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

84. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States

85. The aforementioned customs, policies, usages, practices, procedures and rules of the NYPD included, but were not limited to committing perjury and/or manufacturing evidence in an effort to convict individuals, pursuant to a policy, custom or practice of fabricating evidence and offering false testimony, and pursuant to a culture of the so-called "blue wall of silence."

86. In addition, CITY engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of Plaintiff's rights as described herein. As a result of the failure of the CITY to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, CITY has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

87. Queens County District Attorney's Offices engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training and supervising its employees that was the moving force behind the violation of Plaintiff's rights as described herein. As a result of the failure of the Queens County District Attorney's Offices to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, Queens County District Attorney's Offices has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

88. The foregoing customs, policies, usages, practices, procedures and rules of CITY, Queens County District Attorney's Offices and the NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff.

89.The foregoing customs, policies, usages, practices, procedures and rules of CITY, Queens County District Attorney's Offices and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

90.The foregoing customs, policies, usages, practices, procedures and rules of CITY, Queens County District Attorney's Offices and the NYPD were the moving force behind the Constitutional violations suffered by Plaintiff as alleged herein.

91.As a result of the foregoing customs, policies, usages, practices, procedures and rules of CITY, Queens County District Attorney's Offices, and the New York City Police Department, Plaintiff was unlawfully arrested, prosecuted, and convicted.

92.Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff's constitutional rights.

93.All of the foregoing acts by defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right to Due Process under the Fifth and Fourteenth Amendments, the right to equal protection under the law, the right to be free from unreasonable searches, seizures.

94.As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.


**SIXTH CAUSE OF ACTION**
(Conspiracy to Violate Civil Rights)

95.Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

96. All of the aforementioned Defendants conspired to violate Plaintiffs civil rights by agreeing among themselves to commit the acts, as described above, in violation of 42 U.S.C. § 1985, for which the Defendants are individually liable.

97. Defendants, agents and employees of both the NYPD and the Queens District Attorney's Office, two distinct and separate agencies, conspired together to violate Plaintiff's civil rights and Defendant police officers also conspired with one or more "confidential informants," individuals who were not agents or employees of either agency.

**SEVENTH CAUSE OF ACTION**
<u>(Violation of Fifth & Fourteenth Amendment Rights)</u>

98. Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

99. Due process ensures the rights and equality of all citizens. The Fifth and Fourteenth Amendments to the United States Constitution each contain a due process clause dealing with the administration of justice and acting as a safeguard from arbitrary denial of life, liberty, or property by the government outside the sanction of law.

100. Defendants, acting under the color of law, have enforced, promoted, encouraged, and sanctioned a policy, practice, and/or custom of excessive and unreasonable systemic delay in court. By permitting, tolerating, sanctioning, and causing such widespread systemic Court Delay, Defendants have deprived Plaintiff of his due process right to have a trial at a meaningful time and in a meaningful manner as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

101.Defendants, by repeatedly refusing to present their case to a Grand Jury, and by instead repeatedly demanding that Plaintiff engage in proffer sessions and by aggressively encouraging Plaintiff to plead guilty despite his unwavering protestations of innocence, violated Plaintiff's Fifth Amendment right against self-incrimination.

## EIGHTH CAUSE OF ACTION
### (Violation of Sixth & Fourteenth Amendment Rights)

102.Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

103.Defendants, acting under the color of law, have enforced, promoted, encouraged and sanctioned a policy, practice, and/or custom of excessive and unreasonable systemic Delay by permitting, tolerating, sanctioning, and causing such widespread systemic Court Delay, Defendants have deprived Plaintiff of his right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983, and have by allowing, ignoring, and/or promoting false evidence, arrests and prosecutions based on fraud and/or lacking probable cause, coerced Plaintiff into a constitutionally impermissible choice between exercising his Sixth Amendment right and facing harsher sentences than those who accept a plea bargain.

104.Specifically, Defendants violated Plaintiff's rights under the Sixth and Fourteenth Amendments by threatening him with additional charges and by failing to present the charges to a Grand Jury and by telling Plaintiff he had no choice but to accept Defendants' plea deal.

## NINTH CAUSE OF ACTION
### (Violation of Fourth & Fourteenth Amendment Rights)

105. Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

106. Defendants, by procuring and presenting false evidence in support of a court-issued search warrant, and by unreasonably extending the scope of that warrant in order to search Plaintiff's home, violated Plaintiff's right to be free from unreasonable searches and seizures.

## TENTH CAUSE OF ACTION
### (Violation of First, Fifth, Ninth & Fourteenth Amendment Rights)

107. Plaintiff repeats, reiterates, realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth herein.

108. The rights of parents to the care, custody and nurture of their children is of such character that it cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and such right is a fundamental right protected by First, Fifth, Ninth, and Fourteenth Amendments.

109. Defendants interfered with Plaintiff's relationship with his son indirectly, when on repeated occasions Defendant District Attorneys told Plaintiff, in sum and substance, to plead guilty or he would never see his son again, and indirectly, in that Plaintiff was prevented from seeing his son during the pendency of the criminal case.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered as follows:

(A)     A declaration that Plaintiff's rights secured by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America, and by 42 U.S.C. §1983, as well as the New York Constitution, were violated;

(B)     Compensatory damages in an amount to be determined by a jury;

(C)      By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages in an amount to be fixed at trial;

(D)     An award to Plaintiff of the costs and disbursements herein;

(E)     An award of attorney's fees under 42 U.S.C. §1988;

(F)     Such other and further relief as this Court may deem just and proper.

Dated: January 15, 2018

Yours, etc.

/s/ Joseph P. Griffin
BRILL LEGAL GROUP, P.C.
By: Joseph P. Griffin
64 Hilton Avenue
Hempstead, NY 11550
(888) 315-9841